### HORDERN v. SALVATION ARMY.

(Supreme Court, Appellate Division, First Department.    March 6, 1908.)

1. NEGLIGENCE—PERSONS OWING DUTY.

> Plaintiff, a foreman steam fitter, was sent by his employer to do some work in the engine and boiler rooms of defendant's building. Connected with the boiler room was an annex, in which coal was stored, the floor of which was four feet above that of the boiler room; and, to enable the fireman to bring coal therefrom to the engine, he had put up a temporary structure of three planks on wooden horses. Plaintiff used this way to get ladders from the annex to use in his work, and, in returning them, after doing the work, he was injured by one of the planks turning in some way. *Held*, in the absence of more, that not only no negligence, but no duty of defendant to plaintiff with respect to the way, was shown.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 59.]

2. TRIAL—REMARKS AND CONDUCT OF COUNSEL.

> Judgment for plaintiff should be reversed where it appears from the record that plaintiff's counsel suggested to the jury, by argument or by questions to a witness, that defendant was protected by insurance, and so would sustain no damage by a verdict against it, though there was no request to withdraw a juror or to impanel a new jury.

Appeal from Trial Term.

Action by David Hordern against the Salvation Army. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and SCOTT, JJ.

Frederick B. Campbell, for appellant.
Stuart G. Gebboney, for respondent.

INGRAHAM, J. The defendant is the owner of a building known as Nos. 120, 122 and 124 West Fourteenth street, in the city of New York. There is a room in the cellar which contains

boilers for use in the building. The defendant is a corporation organized under the laws of this state as a religious and charitable corporation, and devotes this building entirely to its charitable work. The plaintiff was employed by one Daniel Carey as a foreman steam fitter. He was sent by his employer to work in the engine room and boiler room of defendant's building. The boiler-room was connected with the engine room, but was at a slightly lower level. An adjoining building seems to have been used by the defendant which was also connected with the boiler room in the main building. The level of a room in the annex in which defendant stored coal was about four feet higher than the floor of the boiler room in the main building. From this room in the annex into the boiler room in the main building a sort of a platform had been erected, consisting of planks upon wooden horses, which was used by the employés of defendant for bringing coal from the annex into the boiler room in the main building. On Sunday, October 4th, the plaintiff needed some ladders in his work, and had been told by some employés of the defendant that he could get ladders in the annex, and he got the ladders from the annex. After he had finished using them, he started to take them back into the annex, walking over this platform which was maintained for the purpose of wheeling coal into the boiler room, when one of the planks placed upon the horses turned, and he fell and was injured. This platform was made of three planks; one end of them resting upon the floor of the room in the annex, and the other end on the top of wooden horses in the boiler room. These three planks were butted together, and were about four feet above the floor of the boiler room. The employés of the defendant had been constantly using this platform, and, so far as appears, no one had ever been injured by it. I can find no evidence as to what caused this accident. The evidence of the plaintiff is that he used the platform that he found in the defendant's premises which had been used for bringing coal into the boiler room; that he walked on the platform several times and at last fell off, and was injured. There is no evidence to sustain any finding that the platform was unsafe or an improper structure for the use to which it was put. The fact that the employés of the defendant had used it for the purpose for which it was designed, without any accident happening, was evidence that it was sufficient for that purpose, and there is no evidence that this platform was constructed or maintained by the defendant for use by this plaintiff; that the plaintiff was ever invited to use it; that the work that plaintiff was required to do made it necessary to use it; or that the defendant was ever in any way responsible for its use by the plaintiff. The nature of the structure was apparent to any one and especially the plaintiff, who was a skilled workman, and used to scaffolding and other appliances of that kind. It was a temporary structure of two or three planks upon wooden horses erected by the fireman to bring coal into the engine room. It was not constructed by the defendant for the use of any one, but was constructed by an employé for his own use. There was no reason why the plaintiff should use it if he did not want to, and the de-

fendant owed the plaintiff no duty to furnish him with proper scaffolding or appliances of this kind. The defendant was not liable because plaintiff walking on the loose plank fell, and the complaint should have been dismissed.

There was one occurrence on the trial, however, that requires notice, and which would require a reversal of the judgment if the proof would have justified the submission of the case to the jury. The plaintiff's counsel was cross-examining one of the witnesses who was at the time superintendent of the building in which this accident occurred, when counsel asked the witness to state whether or not it was a fact that the Salvation Army had a policy of insurance against the consequences of this accident. This was at once objected to by the defendant. The court sustained the objection, and instructed the jury to disregard the statement. Notwithstanding this objection and the ruling of the court, counsel for the plaintiff insisted upon pressing the question, claiming that he had a right to get in the evidence, when the defendant's counsel again objected to the statement and argument of counsel. The question as to whether or not under any circumstances evidence of this kind is competent has been so often before the court and so uniformly decided that there can be now no question that under no circumstances is it proper to ask such a question. The only possible ground of asking the question is to suggest to the jury that, as the defendant would sustain no damage by a verdict against it, they should give to the injured plaintiff compensation to which under other circumstances he would not be entitled. The avowed purpose of asking the question here was to meet the objection that the defendant was a charitable corporation, and that its funds should not be diverted from charitable uses in paying an amount due to the plaintiff because of his injuries. As counsel in cases of this kind have been so often admonished as to the impropriety of suggesting either by way of argument or by way of questions to the jury, or in any other way, that the defendant was protected by insurance, it seems to be unnecessary to say more than that such a suggestion in the presence of the jury will render any verdict that has been obtained by the plaintiff valueless, as a violation of the rule will require a reversal of the judgment. It is quite true that in this case there was no request to the court to withdraw a juror or to impanel a new jury, and consequently no denial of such a motion and exception is presented; but counsel has been so often admonished that such practice will not be tolerated that, where it appears from the record that the rule has been violated, we think there should follow as a penalty a reversal of the judgment and the direction of a new trial.

The judgment and order appealed from are reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.